UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* THOMAS BAILEY,<br><br>    Plaintiff,<br><br>    v.<br><br>VETERANS MEDICAL TRANSCRIPTION SERVICES, INC. *et al.*,<br><br>    Defendants. | Civil Action No. 20-2312 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

Thomas Bailey brought this action, as a relator, pursuant to the *qui tam* provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(b)(1), against Veterans Medical Transcription Services, Inc. ("VMTS") and its owners and officers, Steven Rose, Michael Dortch, and David Bradford ("Individual VMTS Defendants," and with VMTS, "VMTS Defendants"); and Stone Network, Inc. ("Stone") and its president, Sinnappan Mani (jointly, "Stone Defendants"), alleging that defendants misrepresented VMTS as a service-disabled veteran-owned small business ("SDVOSB") and fraudulently obtained SDVOSB certification from the U.S. government. *See generally* Am. Compl., ECF No. 11. Such certification allegedly made defendants eligible for procurement contracts specially set aside for SDVOSBs or that prioritized the engagement of SDVOSBs, by government agencies such as the Department of Veterans Affairs ("VA"), as encouraged by the Small Business Act, *see* 15 U.S.C. ch. 14A. Relying on this certification of SDVOSB status, VMTS was allegedly able to obtain numerous contracts that "resulted in millions of dollars of improper payments by federal agencies." Am. Compl. ¶ 89.

The United States has declined to intervene in this matter. *See* Notice of Election to Decline Intervention, ECF No. 7. Both the VMTS Defendants and the Stone Defendants have now moved to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 9(b), for

1

failure to plead fraud with the requisite particularity and, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. *See* Stone Defs.' Mot. to Dismiss ("Stone Defs.' Mot."), ECF No. 22; VMTS Defs.' Mot. to Dismiss ("VMTS Defs.' Mot."), ECF No. 23. For the reasons below, both motions are granted.

I. **BACKGROUND**

The U.S. government, "the world's largest buyer of goods and services," Am. Compl. ¶ 28, has adopted the "policy," as codified in the Small Business Act, as amended, that the government "should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns . . . to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government . . . be placed with small-business enterprises," 15 U.S.C. § 631(a). To effectuate this goal, "small business concerns owned and controlled by service-disabled veterans . . . shall have the maximum practicable opportunity to participate in the performance of contracts let by any Federal agency." 15 U.S.C. § 637(d)(1). The President is required to establish government-wide goals for procurement contracts awarded to SDVOSBs, and such goal may not be "less than 3 percent of the total value of all prime contract and subcontract awards for each fiscal year." *Id.* § 644(g)(1)(A)(ii).

Relevant here are two programs authorizing federal agencies to prioritize SDVOSBs: the Service-Disabled Veteran-Owned Small Business Program ("SDVOSB Program"), and the VA's Veterans First Contracting Program ("VFCP"). *See* Am. Compl. ¶ 36. Both programs adopt the definition of SDVOSB provided in the Small Business Act, *see* 38 U.S.C. § 8127(m)(3); 13 C.F.R. § 125.3(a), which defines SDVOSB to include a small business concern "not less than 51 percent of which is owned by one or more service-disabled veterans" and "the management and daily business operations of which are controlled by one or more service-disabled veterans," 15

U.S.C. § 632(q)(2)(A).  The SDVOSB Program and the VA's VFCP have similar eligibility requirement but differing certification requirements.  Am. Compl. ¶ 38.  The SDVOSB Program requires businesses to self-certify every year as an SDVOSB in the government's System for Award Management ("SAM"), a system used, *inter alia*, for private contractors to register to conduct business with the federal government.  *Id.* ¶ 41.  An entity must have an active registration in SAM to conduct business with the federal government.  The VA's VFCP, in contrast, requires businesses to apply to the VA's Center for Verification and Evaluation ("CVE") for certification of SDVOSB status.  *Id.* ¶ 38.  Only if SDVOSB status is granted by the CVE may a business bid on a VA SDVOSB contract.  *Id.* ¶ 39.

VMTS is a medical transcription service company that has "pursued contracts with the United States, including contracts set aside for [SDVOSBs]."  *Id.* ¶ 68.  VMTS allegedly sought certification as an SDVOSB contractor "to compete for VA contracts set aside for SDVOSB companies," *id.* ¶ 69, and as of February 27, 2018, had been verified as an SDVOSB by CVE and listed as an eligible SDVOSB on the VA's Vendor Information Page, *id.* ¶ 70.  VMTS also allegedly self-certified in SAM as an SDVOSB "to compete for contracts set aside for [SDVOSBs] by other federal agencies."  *Id.* ¶ 69.  On February 24, 2017, VMTS represented in SAM that it was not an SDVOSB and had an "inactive" status, meaning that its registration had expired and had not been renewed, but subsequently, on September 12, 2017, VMTS represented in SAM that it was an SDVOSB, still with an "inactive" status, which status continued until as late as May 23, 2019.  *Id.* ¶ 14.  As of November 15, 2022, VMTS, continuing to represent itself as an SDVOSB, had an "active" status.  *Id.*

According to relator, VMTS's seeking of certification through CVE and its self-certification in SAM was fraudulent and in violation of the FCA because VMTS "is not

3

unconditionally owned and controlled by one or more service-disabled veterans." *Id.* ¶ 72. Specifically, he alleges that, on June 8, 2015, VMTS was purchased by Digital Transcription Services Inc., owned by Defendant Mani and Timothy Nicholls. *Id.* ¶ 65. At some point before November 2017, the ownership again changed, and by November 2017, Defendants Rose, Dortch, and Bradford owned VMTS. *Id.* ¶ 66. Dortch and Rose are service-disabled veterans, *id.*, and the amended complaint contains no allegations about whether Bradford is also a service-disabled veteran. Despite this formal ownership change, relator alleges that VMTS remains "effectively managed and controlled" by Mani, who is not a service-disabled veteran, and Bradford, and thus that VMTS does not meet the SDVOSB criteria. *Id.* ¶¶ 73–74.[1] Put differently, relator alleges that Mani and Bradford—rather than Dortch and Rose, who are service-disabled veterans—own VMTS, and thus that VMTS is not an SDVOSB. Nonetheless, VMTS allegedly sought certification and self-certified as an SDVOSB to gain priority for government contracts and "to target and financially injure government programs." *Id.* ¶ 93; *see also id.* ¶¶ 76–77.[2]

On August 13, 2020, relator commenced this FCA action against defendants. Compl., ECF No. 1. Over two years later, the United States declined to intervene, and the case was unsealed. On November 15, 2022, relator filed the operative amended complaint, alleging that all defendants violated three provisions of the False Claims Act, namely: (1) in Count 1,

---

[1] Relator alleges that VMTS and Stone are affiliated because both are "effectively managed and controlled" by Mani, have "substantially identical business interests," and "share an address," staff, utilities, "intellectual, physical, and information resources," and two common entrances and because "VMTS leases office space from a company owned" by Mani. Am. Compl. ¶¶ 67, 73 (citation omitted).

[2] Attached to the original complaint is Exhibit 2, a 300-page, 3518-line table, purporting to list all the contracts that VMTS fraudulently obtained by presenting itself as an SDVOSB. *See* Am. Compl. ¶¶ 68, 79, 82; *see also* Compl., Ex. 2, Part 1 ("Ex. 2 Pt. 1"), ECF No. 1-2; Compl., Ex. 2, Part 2 ("Ex. 2 Pt. 2"), ECF No. 1-3; Compl., Ex. 2, Part 3 ("Ex. 2 Pt. 3"), ECF No. 1-4; Compl. Ex. 2, Part 4 ("Ex. 2 Pt. 4"), ECF No. 1-5; Compl., Ex. 2, Part 5 ("Ex. 2 Pt. 5"), ECF No. 1-6; Compl., Ex. 2, Part 6 ("Ex. 2 Pt. 6"), ECF No. 1-7; Compl., Ex. 2, Part 7 ("Ex. 2 Pt. 7"), ECF No. 1-8. None of the exhibits attached to his original complaint were refiled with the amended complaint but are incorporated by reference.

"knowingly present[ed], or caus[ed] to be presented, false and fraudulent claims for payment or approval to the Government for goods and services relating to the provision of transcription services," in violation of 31 U.S.C. § 3729(a)(1)(A); (2) in Count 2, "knowingly made false representations to the United States," in violation of 31 U.S.C. § 3729(a)(1)(B); and (3) in Count 3, "knowingly conspired—and are still conspiring—to commit acts in violation of the FCA," in violation of 31 U.S.C. § 3729(a)(1)(C).  Am. Compl. ¶¶ 99, 105, 109.  Relator seeks a multitude of relief, including orders that defendants "cease and desist" from violating the FCA and "disgorge all sums by which they have been unjustly enriched by their wrongful conduct," three times the amount of damages that the government sustained as a result of defendants' acts, "a civil penalty of not less than $5,500[] or more than $11,000 per claim," and all costs incurred by relator in this action.  *Id.* (Prayer for Relief).  Defendants, in turn, have moved to dismiss the complaint pursuant to Rule 9(b) for failure to plead fraud with the requisite particularity and pursuant to Rule 12(b)(6) for failure to state a claim.

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (citation omitted).  A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability" and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Banneker Ventures, LLC v. Graham*, 798 F.3d

1119, 1129 (D.C. Cir. 2015) ("Plausibility requires more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

In deciding a motion under Rule 12(b)(6), a court must consider the whole complaint, accepting all factual allegations in the complaint as true, even if doubtful in fact, and construing all reasonable inferences in the plaintiff's favor. *Twombly*, 550 U.S. at 555; *see also Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022). A court, however, does not "accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations in original accepted and citation omitted). "[N]aked assertions devoid of further factual enhancement" are not sufficient to support a complaint. *Iqbal*, 556 U.S. at 678 (alteration in original accepted and citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief," and the case can be dismissed. *Id.* at 679 (alteration in original accepted and citation omitted).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alterations in original accepted and citation omitted). Additionally, a court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and may do so "at any stage of the proceeding." Fed. R. Evid. 201(b)(2), (d). A court may thus take judicial notice of "public records." *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *see, e.g.*, *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059

(D.C. Cir. 2007) (taking judicial notice of Department of Labor's wage determinations); *Grant v. Dep't of Treasury*, 194 F. Supp. 3d 25, 28 n.2 (D.D.C. 2016) (taking judicial notice of agency decisions, which are "official, public documents subject to judicial notice").[3]

### B.     Federal Rules of Civil Procedure 8 and 9(b)

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(d) further counsels that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). When a plaintiff alleges fraud, including when stating a claim under the FCA, a plaintiff must meet the pleading standard set out in Rule 9(b), which provides that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195 n.6 (2016) ("False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of

---

[3]     The Stone Defendants attach five exhibits to their motion to dismiss, which relator argues are "extrinsic materials" that are not "documents attached as exhibits or incorporated by reference in the complaint." Pl.'s Opp'n Stone Defs.' Mot. to Dismiss ("Pl.'s Stone Opp'n") at 5–6, ECF No. 24 (citation omitted). Relator, however, makes no mention of Federal Rule of Evidence 201, which allows a court to "take judicial notice on its own" of "a fact that is not subject to reasonable dispute." Fed. R. Evid. 201(b)–(c). As explained above, courts, applying this principle, often take notice of agency decisions. *See, e.g.*, *New York v. Meta Platforms, Inc.*, 66 F.4th 288, 303 (D.C. Cir. 2023) (taking judicial notice of FTC complaint, which comprises of "facts on the public record" (citation omitted)).

For this reason, the Court may take judicial notice of Exhibits 1 through 3 to the Stone Defendants' motion to dismiss. *See* Stone Defs.' Reply Supp. Mot. to Dismiss ("Stone Defs.' Reply") at 4, ECF No. 25. Exhibit 1 is the CVE's determination, upon consideration of a challenge brought by Transcriptions, Inc., dba Alpha Transcription ("Alpha"), that "VMTS does meet the eligibility requirements" to "qualif[y] as a SDVOSB." Stone Defs.' Mot., Ex. 1 at 1, ECF No. 22-1; *see also id.* at 2–3 (rejecting Alpha's argument that "VMTS does not qualify as an eligible SDVOSB due to the concern's reliance and association with Stone Network, a non-SDVOSB entity"). Exhibit 2 is the VA's Office of Small and Disadvantaged Business Utilization's decision, affirming the CVE's conclusion that VMTS qualifies as an SDVOSB. Stone Defs.' Mot., Ex. 2 at 1, ECF No. 22-2; *see also id.* at 2–3 (finding "no merit" to the argument that VMTS is not an SDVOSB because of its relationship with Stone). Exhibit 3 is a U.S. Small Business Administration Office of Hearings and Appeals decision concluding that "VMTS is unconditionally owned by service-disabled veterans." Stone Defs.' Mot., Ex. 3 at 17, ECF No. 22-3. Relying on these three exhibits, the Stone Defendants argue that "Alpha has a long history of protesting decisions contracts awarded" to VMTS. Stone Defs.' Mot. at 1. While this may be true, the relevance of this "long history," exemplified by Exhibits 1 through 3, to this action are unclear since nothing in record suggests relator has any relation to Alpha.

In contrast, Exhibits 4 and 5, which are declarations by Michael Dortch and Steven Rose, respectively, *see* Stone Defs.' Mot., Ex. 4, ECF No. 22-4; Stone Defs.' Mot., Ex. 5, ECF No. 22-5, are neither documents attached to the complaint or otherwise incorporated by reference, nor matters of which the Court may take judicial notice and thus may not be considered on a motion to dismiss. *See United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 936 (D.C. Cir. 2017) ("Federal Rule of Civil Procedure 12(d) forbids considering facts beyond the complaint in connection with a motion to dismiss the complaint for failure to state a claim.").

7

Civil Procedure 8 and 9(b)."); *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551–52 (D.C. Cir. 2002) ("[B]ecause the False Claims Act is self-evidently an anti-fraud statute, complaints brought under it must comply with Rule 9(b)."). This heightened pleading standard is designed to "discourage the initiation of suits brought solely for their nuisance value, and safeguard[] potential defendants from frivolous accusations of moral turpitude," as well as "guarantee all defendants sufficient information to allow for preparation of a response." *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 123 (D.C. Cir. 2015) (alteration in original accepted and citation omitted).

Rule 9(b)'s "requirement of particularity does not abrogate Rule 8." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1386 (D.C. Cir. 1981)). Rather, read together, "Rules 8 and 9(b) require a plaintiff to plead the time, place, and content of the fraud and to identify the individuals allegedly involved." *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 936 (D.C. Cir. 2017) (citation omitted). In other words, a plaintiff must provide the "who," "what," "when," and "where" with respect to the circumstances of the fraud, so that the defendant is put on "fair notice of the fraud of which it is accused." *Heath*, 791 F.3d at 124.

### III.    DISCUSSION

Relator alleges that defendants violated the FCA by presenting false claims for payment or approval to a government agency, by making materially false statements in such claims for payment or approval, and conspiring to do both, in violation of 31 U.S.C. § 3729(a)(1)(A) (Count 1), (B) (Count 2), and (C) (Count 3). In its opposition to the Stone Defendants' motion to dismiss, relator abandons Counts 1 and 2 as to the Stone Defendants, leaving only the conspiracy claim against them. *See* Pl.'s Opp'n Stone Defs.' Mot. to Dismiss ("Pl.'s Stone Opp'n") at 5,

ECF No. 24 ("While it may be true that the Complaint does not allege that either Stone Network nor Mr. Mani specifically submitted a false claim for payment, they conspired, either individually or together with VMTS and its principals, to submit false pay claims on behalf of VMTS, a company controlled by Mr. Mani, for the financial benefit of all the Defendants."). While the Stone Defendants' motion to dismiss may thus be granted, in part, as conceded as to Counts 1 and 2, all defendants' motions are granted in full for the reasons set out below. Since an underlying violation of the FCA is a prerequisite for a claim of conspiracy to violate the FCA, Counts 1 and 2 are addressed first, before turning to Count 3.

### A.    Counts 1 and 2

Counts 1 and 2 do not satisfy Rule 9(b)'s particularity requirement. The amended complaint alleges that Exhibit 2, a 300-page, 3518-line table, lists the contracts that VMTS fraudulently obtained by presenting itself as an SDVOSB. *See* Am. Compl. ¶¶ 68, 79, 82; *see also* Pl.'s Opp'n VMTS Defs.' Mot. to Dismiss ("Pl.'s VMTS Opp'n") at 4, ECF No. 26 ("The specific contracts involved, through which all Defendants improperly benefited from the fraud and conspiracy, are specifically identified in Exhibit 2."); Pl.'s Stone Opp'n at 5 (same). Exhibit 2, however, raises more questions than it answers and certainly does not provide defendants with "sufficient information to allow for preparation of a response" to the complaint. *Joseph*, 642 F.2d at 1385.

Most of the contracts listed in Exhibit 2, for example, do not list VMTS as a vendor and appear to have nothing to do with VMTS. *See, e.g.*, Ex. 2 Pt. 1 at 36–50; Ex. 2 Pt. 2 at 1–50; Ex. 2 Pt. 3 at 1–51; Ex. 2 Pt. 4 at 1–49; Ex. 2 Pt. 5 at 1–50; Ex. 2 Pt. 6 at 1–50; Ex. 2 Pt. 7 at 1–50. In fact, only approximately 344 of the 3517 contracts listed in Exhibit 2 seem to involve VMTS

at all. *See* Ex. 2 Pt. 1 at 2–36.[4] Even considering only these 344 contracts, plaintiff has not "state[d] with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Specifically, the allegations regarding the "time . . . of the false misrepresentations" are entirely inadequate. *Kowal v. MCI Commc'n Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994). In a vacuum, Exhibit 2 suggests that the time for the alleged fraud is approximately 2010 to 2020, since the 344 contracts that, on their face, involve VMTS date from approximately 2010 to 2020. *See* Ex. 2 Pt. 1 at 2–36.[5]

Comparing the date range for the 344 contracts in Exhibit 2 that appear to involve VMTS, with the allegations in the amended complaint, however, a period of 2010 to 2020 for the alleged fraud does not make sense. Relator alleges that VMTS did not represent itself in SAM as an SDVOSB until September 2017, Am. Compl. ¶ 14, and that VMTS was not verified as an SDVOSB by the CVE until February 2018, *id.* ¶ 70. The amended complaint, however, does not provide a date on which VMTS certified, in its application to be certified by the CVE, that it was an SDVOSB, or a date on which VMTS, relying on this allegedly fraudulent misrepresentation, entered a government contract and submitted claims for payment under this contract. *See United States ex rel. Cimino v. Int'l Bus. Machs. Corp.*, 3 F.4th 412, 417 (D.C. Cir. 2021) (explaining that "[u]nder longstanding Supreme Court precedent," a violation of Section 3729(a)(1)(A) "occurs when a person fraudulently induces the government to enter a contract and later submits claims for payment under that contract"). Put differently, given the allegations in the amended

---

[4] Approximately 16 contracts reflected in Exhibit 2 involve Stone, *see* Ex. 2 Pt. 5 at 49 (Lines 2569–71); Ex. 2 Pt. 6 at 26, 33, 40, 46 (Lines 2825–27, 2893–98, 2966–68, 3035), but the amended complaint does not allege that Stone falsely presented itself as an SDVOSB, *see* Pl.'s VMTS Opp'n at 3.

[5] Exhibit 2 includes contracts that date all the way back to the 1980s, *see, e.g.*, Ex. 2 Pt. 1 at 37–38, 43, 48, and, consequently, allegations of fraud related to many of these contracts are likely time-barred, *see Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510 (2019); *see also* VMTS Defs.' Mot. at 7. As further evidence of the inadequacy of relator's allegations, defendants, based on the information available, cannot know whether to prepare a defense based on the FCA's statute of limitations.

complaint, the earliest date that VMTS presented a material false statement in violation of Section 3729(a)(1)(B) (Count 2) or that VMTS could have presented a false claim for payment or approval in violation of Section 3729(a)(1)(A) (Count 1) was September 2017.

The amended complaint further alleges that VMTS was owned by "Stan and Rebecca Robinson," who are not parties to this action, until June 8, 2015, when Defendant Mani purchased VMTS. *Id.* ¶ 65. Then, defendants Rose, Dortch, and Bradford allegedly purchased VMTS at some point between June 2015 and November 2017. *Id.* ¶ 66. Yet, because the alleged violation of the FCA is that VMTS, when it was owned by Defendants Rose, Dortch, and Bradford, was "effectively managed and controlled" by Mani and Bradford, *id.* ¶¶ 73–74, the alleged fraud cannot have commenced until Defendants Rose, Dortch, and Bradford purchased VMTS. In short, Exhibit 2 suggests that the time for the alleged fraud is approximately 2010 to 2020, whereas the amended complaint, though failing to identify a start date, suggests that the alleged fraud began at some point in 2017 or 2018. Read together, Exhibit 2 and the amended complaint thus provide confusing and insufficient allegations regarding the time of any alleged false misrepresentation.

In opposition to the VMTS Defendants' motion to dismiss, relator, citing paragraph 95 of the amended complaint, argues that "the Amended Complaint is clear that the alleged acts of fraud and conspiracy took place from 2017 to the present and involved the contracts identified in Exhibit 2." Pl.'s VMTS Opp'n at 4. Paragraph 95, however, states only that the period for the alleged conspiracy (Count 3) is "from at least 2017 to the present" and says nothing about the period for Counts 1 and 2. Am. Compl. ¶ 95. Even if paragraph 95 could be read to impose a period "from at least 2017 to the present" for Counts 1 and 2, such allegation would be in tension with relator's statement that the "alleged acts of fraud . . . involved the contracts identified in

11

Exhibit 2," since the contracts identified in Exhibit 2 date back to the 1980s and those specifically involving VMTS date back to 2010. *See Williams*, 389 F.3d at 1257 (concluding that relator's attempt to cabin the time period for the allegedly fraudulent activities in his briefing "comes too late"); *see also* VMTS Defs.' Mot. at 8 ("Plaintiff appears to be trying to place over twenty-five years' worth of contracts at issue—exactly the type of 'fishing expedition' that Rule 9(b) seeks to avoid."). In sum, the amended complaint provides for an "open-ended time span" for the alleged fraud that fails to give defendants "sufficient information to allow preparation of a response," in violation of Rule 9. *Williams*, 389 F.3d at 1257 (citation omitted).[6]

Equally obscured is the Individual VMTS Defendants' role in the alleged fraudulent activity. *See id.* (explaining that "who precisely was involved in the fraudulent activity" must be pled with particularity). "In the context of a fraud suit involving multiple defendants," Rule 9(b) requires a plaintiff to, "at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (alteration in original accepted and citation omitted); *see also Vicom, Inc. v. Harbridge Merchs. Servs., Inc.*, 20 F.3d 771, 777–78 (7th Cir. 1994) (similar). The only allegations in the amended complaint with respect to the Individual VMTS Defendants, however, are the following: (1) the Individual VMTS Defendants are the current "owner[s] of VMTS" and took ownership at some point between June 2015 and November 2017; (2) "Dortch and Rose represent themselves to be

---

[6] The "fact misrepresented" is also arguably ambiguous. *Kowal*, 16 F.3d at 1278. On the one hand, the amended complaint alleges that "VMTS is not unconditionally owned and controlled by one or more service-disabled veterans," suggesting that VMTS's claim that it is "unconditionally owned and controlled by one or more service-disabled veterans" is the fact misrepresented. Am. Compl. ¶ 72; *see also* Pl.'s Stone Opp'n at 4 (arguing that "[a]lthough VMTS alleges that it is controlled by Defendant Rose and Dortch as the qualifying service disabled veterans, actual control and management of the firm is in the hands of" Mani, who is not a service-disabled veteran, and Stone, which is not an SDVOSB). On the other hand, the amended complaint contends that VMTS and Stone are "affiliated" and explains that "[w]hen two companies are affiliated, the SBA combines the revenue or number of employees of both companies when making a size determination," suggesting that VMTS's claim that it is a "small business" is the fact misrepresented. Am. Compl. ¶¶ 50, 73; *see also* Pl.'s Stone Opp'n at 4 (arguing that VMTS and Stone are affiliated).

service-disabled veterans"; and (3) "Bradford has made conflicting representations at various times that he is, and that he is not, an officer of Stone." Am. Compl. ¶¶ 16–18, 65–66, 73.

The amended complaint thus lacks any specific facts about any of the Individual VMTS Defendants, their conduct, or their involvement in the alleged fraud. None of the Individual VMTS Defendants are alleged to have directly presented false claims or made false statements to the government; rather, all claims or statements were made by VMTS. *See, e.g.*, *id.* ¶¶ 69–90. Relator does not allege, for example, that the Individual VMTS Defendants prepared the false claims themselves or falsely identified themselves as the owners of VMTS for the purpose of fraudulently obtaining SDVOSB status. *See, e.g.*, *United States ex rel. Scollick v. Narula*, 215 F. Supp. 3d 26, 47 (D.D.C. 2016). None of the allegations with respect to the Individual VMTS Defendants indicate that they were involved in the scheme of submitting false claims and statements to the government, much less that they took on roles that were substantial factors in causing the submission of false claims or statements. *See Cimino*, 3 F.4th at 420 (explaining that to establish causation, relator must "plead actual causation under a but-for standard").[7] Relator does not allege, for example, that the Individual VMTS Defendants took "advantage of an unwitting intermediary, thereby causing that party to submit a false claim" or "agreed to take certain critical actions in furtherance of the fraud." *United States ex rel. Tran v. Comput. Scis. Corp.*, 53 F. Supp. 3d 104, 126–27 (D.D.C. 2014) (Brown Jackson, J.). Rather, the amended complaint alleges no facts about the acts of any of the Individual VMTS Defendants, much less sufficient "factual content [to] allow[] the court to draw the reasonable inference that the

---

[7] Relator has arguably abandoned Counts 1 and 2 as to the Individual VMTS Defendants by focusing on only the conspiracy alleged against these individuals in Count 3. *See* Pl.'s VMTS Opp'n at 5 ("With regard to the submission of a false claim for payment, it is irrelevant which, if any, of the three individual Defendants actually submitted or caused to be submitted, claims for payment as they all conspired to submit false pay claims on behalf of VMTS."). As the VMTS Defendants correctly point out, "whether the defendant presented a cla[i]m for payment or approval to the government is an element of a proper False Claims Act claim. How could the question of which Defendant actually submitted the claim be irrelevant?" VMTS Defs.' Reply Supp. Mot. to Dismiss ("VMTS Defs.' Reply") at 3, ECF No. 27 (citation omitted).

defendant is liable for the misconduct alleged," as Rules 8 and 9(b) require. *Iqbal*, 556 U.S. at 678; *see also United States v. Bornstein*, 423 U.S. 303, 312 (1976) (explaining that the FCA "penalizes a person for his own acts, not for the acts of someone else"); *Antoine v. U.S. Bank Nat'l Ass'n*, 547 F. Supp. 2d 30, 37 (D.D.C. 2008) (explaining that "even if the plaintiffs' complaint sufficiently states a fraud claim against [the corporate defendant], they must plead specific and separate allegations of fraud against [the individual defendant] to succeed against her as an individual defendant" and dismissing the FCA claim against the individual defendant because the complaint failed to "provide[] specific details about the circumstances constituting *her* allegedly fraudulent behavior").[8] "This imprecision not only fail[s] to give the companies sufficient information to answer the complaint, but it also subject[s] the named individuals to vague, potentially damaging accusations of fraud." *Williams*, 389 F.3d at 1257 (finding a complaint lacked specificity where it "repeatedly refer[red] generally to 'management' and provide[d] a long list of names without ever explaining the role these individuals played in the alleged fraud"); *see also United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051–52 (9th Cir. 2001) (concluding that an FCA claim lacked the requisite particularity under Rule 9(b) where, *inter alia*, plaintiff failed to identify the employees involved in the fraud).[9] Counts 1 and 2 are thus dismissed for failure to plead fraud with particularity as required by Rule 9(b).

---

[8]   In opposition to the VMTS Defendants' motion to dismiss, relator contends, for the first time, that "Mani, not a service-disabled veteran, required Rose, who was a service-disabled veteran, to front the business. In exchange for the business opportunity, Rose agreed that VMTS would assume an approximate $400,000 loan of VMTS and obligated himself and subsequent owners, Dortch and Bradford, to make the $10,000 monthly payments going forward all without the benefit of any paper documenting the debt assumption." Pl.'s VMTS Opp'n at 4–5. Setting aside the fact that relator fails to explain why this contention supports its allegations of fraud, these facts are not alleged in the complaint and thus may not be considered on a motion to dismiss. *See Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *Shea*, 863 F.3d at 936.

[9]   Defendants also argue that relator has not stated any facts sufficient to pierce the corporate veil and hold the Individual VMTS Defendants or Mani liable. *See* VMTS Defs.' Mot. at 4–5; Stone Defs.' Mot. at 8–9. These arguments about veil piercing need not be addressed because the claims against both VMTS and Stone are dismissed on other grounds.

**B.     Count 3**

Relator's claim against defendants for conspiracy, in violation of FCA's section 3729(a)(1)(C), also fails because "there can be no liability for conspiracy where there is no underlying violation of the FCA." *Pencheng Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73, 89 (D.D.C. 2014) (Brown Jackson, J.); *see also Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983) ("Since liability for civil conspiracy depends on performance of some underlying tortious at, the conspiracy is not independently actionable."). Several of the problems raised by defendants on the merits of relator's conspiracy claims are worth briefly addressing for completeness.

To state a claim for an FCA conspiracy violation, a plaintiff must show that (1) "an agreement existed" to make false or fraudulent claims or "to have false or fraudulent claims allowed or paid by the United States"; (2) the defendant "willfully joined that agreement"; and (3) "one or more conspirators knowingly committed one or more overt acts in furtherance of the object of the conspiracy." *United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 899 (D.C. Cir. 2010). "[A]llegations of conspiracy do not excuse the plaintiffs from offering detailed and particularized allegations regarding each defendant's role in the fraud." *Puri v. Khalsa*, 674 F. App'x 679, 687 n.2 (9th Cir. 2017); *see also Iqbal*, 556 U.S. at 678. The allegations in the amended complaint as to conspiracy, however, are nothing more than "labels and conclusions," "formulaic recitation[s] of the elements of [the] cause of action," and "naked assertions devoid of further factual enhancement" and thus are insufficient to satisfy the strictures of Rules 8 and 9(b). *Iqbal*, 556 U.S. at 678 (alteration in original accepted and citation omitted).

As discussed above, the allegations with respect to the Individual VMTS Defendants do not explain what role—if any—they had in the alleged fraud or that they "willfully joined th[e] agreement." The amended complaint is similarly devoid of any facts from which any inference could be drawn that Stone or Mani played any role in the alleged fraud or that they agreed to join any conspiracy to defraud the government. The only allegations pertaining to Stone are that VMTS and Stone are affiliated because (1) "VMTS and Stone are effectively managed and controlled by Mr. Mani"; (2) "the firms' owners have substantially identical business or economic interests"; (3) they share an address, staff, utilities, "two common entrances," and "intellectual, physical, and information resources"; and (4) "VMTS leases office space from a company owned by Mr. Mani, who remains a part owner of Stone." Am. Compl. ¶¶ 67, 73 (citations omitted).[10] The only allegations involving Mani are that he is the president of Stone, purchased VMTS in June 2015, and sold it at some point before November 2017. *Id.* ¶¶ 19, 65. The amended complaint further contends that Mani "effectively manage[s] and control[s]" both VMTS and Stone but offers no factual allegations to support this legal conclusion. *Id.* ¶¶ 73–74.

Relator's only argument in response is that "[t]he Amended Complaint alleges that the 'Defendants,' defined as Veteran's Medical Transcription Services, Inc., Steven Rose, Michael Dortch, David Bradford, Stone Network, Inc. and Sinnappan Mani, conspired to defraud the government by claiming that VMTS was a [SDVOSB], owned and managed by Rose, Dortch and Bradford when in fact VMTS was under the express control and management of either Stone Network or Mani, in his individual capacity." Pl.'s VMTS Opp'n at 3; *see also* Pl.'s Stone Opp'n at 3–4. At the outset, the allegations in the complaint that invoke "Defendants" are

---

[10] The Stone Defendants further argue, likely correctly, that these allegations are insufficient to establish the "control" necessary to establish affiliation. *See* Stone Defs.' Reply at 2. Setting aside the allegation that "VMTS and Stone are effectively managed and controlled by Mr. Mani," which is a legal conclusion that need not be accepted as true, none of the remaining allegations is sufficient to establish that Stone or Mani either had "control" or "the power to control" VMTS. 13 C.F.R. § 121.103(a)(1).

16

entirely conclusory and merely restate the elements of conspiracy under the FCA, with no supporting factual allegations. *See, e.g.*, Am. Compl. ¶¶ 91–97. Even setting the conclusory nature of the allegations aside, relator's attempts to rely on its definition of "Defendants" to argue that the amended complaint contains specific, particularized allegations as to each defendant's involvement in the alleged conspiracy is insufficient, without more, to satisfy Rule 8, much less the heightened Rule 9(b) standard. *See Puri*, 674 F. App'x at 687 n.2 ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" (alterations in original accepted and citation omitted)); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 579–80 (2d Cir. 2005) ("Sweeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b)." (citation omitted)).

Finally, relator requests an opportunity to amend if his complaint is found lacking in pleading a fraud claim with the particularity that Rule 9 requires. *See* Pl.'s VMTS Opp'n at 5; Pl.'s Stone Opp'n at 5. The problem with this request is that he has missed his 21-day window to amend his complaint as of right. *See* Fed. R. Civ. P. 15(a)(1). To be sure, courts "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), but "Rule 15(a)—even as liberally construed—applies only when the plaintiff actually has moved for leave to amend the complaint; absent a motion, there is nothing to be freely given," *Schmidt v. United States*, 749 F.3d 1064, 1069 (D.C. Cir. 2014) (quoting *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006)); *see also Williams*, 389 F.3d at 1259 ("While Federal Rule 15(a) provides that leave to amend shall be freely given when justice so requires, a bare request in an opposition to a motion

to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." (quoting *Kowal*, 16 F.3d at 1280)). Relator's amended complaint is thus dismissed.

## IV.    CONCLUSION

"In sum, although Rule 9(b) does not require plaintiffs to allege every fact pertaining to every instance of fraud when a scheme spans several years, defendants must be able to 'defend against the charge and not just deny that they have done anything wrong.'" *Williams*, 389 F.3d at 1259 (quoting *Lee*, 245 F.3d at 1052). Here, relator has failed to allege with particularity the facts upon which the amended complaint's conclusory allegations of fraud and conspiracy to commit fraud are based, and the amended complaint thus does not provide defendants with sufficient information to put them on notice of the claims against them or to allow preparation for a response.

Accordingly, for the foregoing reasons, the Stone Defendants' Motion to Dismiss, ECF No. 22, and the VMTS Defendants' Motion to Dismiss, ECF No. 23, are **GRANTED**, and relator's Amended Complaint, ECF No. 11, is **DISMISSED**.

An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date:  November 13, 2023

_____
**BERYL A. HOWELL**
United States District Judge